765 N.W.2d 448 (2009)
277 Neb. 765
BERRINGTON CORPORATION, doing business as Eldorado Hills Golf Club, Appellant,
v.
STATE OF NEBRASKA DEPARTMENT OF REVENUE and Douglas A. Ewald, Nebraska State Tax Commissioner, Appellees.
No. S-08-580.
Supreme Court of Nebraska.
May 15, 2009.
*450 David L. Buelt, George T. Blazek, and Carlos E. Noel, of Ellick, Jones, Buelt, Blazek & Longo, Omaha, for appellant.
Jon Bruning, Attorney General, and L. Jay Bartel, for appellees.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.
STEPHAN, J.
Under Nebraska law, admission charges are subject to sales tax, but membership dues are not.[1] The principal issue in this *451 case is whether amounts paid by members of the Eldorado Hills Golf Club (Eldorado Hills) in Norfolk, Nebraska, to the corporation which operates that facility are admission charges or membership dues under applicable regulatory definitions.

BACKGROUND
Berrington Corporation (Berrington) is an S corporation with offices in Omaha, Nebraska. It operates Eldorado Hills, an 18-hole golf course and club with a related restaurant, lounge, snack bar, and golf shop located in Norfolk. The general public pays green fees to play the golf course, and Eldorado Hills offers family, individual, senior, student, and other categories of "memberships."
At all relevant times, Berrington's shareholders were Eric and Anne Waddington and Mark and Marjorie Mooberry. The Waddingtons owned 70 percent of Berrington's stock, and the Mooberrys owned the remaining 30 percent. No other person held an equity or ownership interest in the corporation. The Waddingtons and the Mooberrys were the sole members of Berrington's board of directors. No person other than these four individuals participated in the election of the board of directors during the audit period. Eric Waddington was the president and treasurer of the corporation, and Mark Mooberry was the secretary. Mark Mooberry was given authority by Berrington's board of directors to oversee and manage all aspects of the operation of Eldorado Hills. All operating obligations and expenses were paid from a bank account held by Berrington. Only Eric Waddington and Mark Mooberry had signatory authority on the account. Berrington adopted corporate bylaws, which could only be amended by action of the shareholders.
Persons who paid membership dues voted for and elected other members to serve on an advisory board, which served as a means by which persons considered to be members of Eldorado Hills could communicate with Berrington on various issues involving the operation of the golf course and related facilities. The advisory board was unincorporated and had no operating bylaws or constitution. It did, however, participate at least in part in the adoption and amendment of the Eldorado Hills' rules and regulations.
The advisory board, on behalf of the members, also worked closely with Berrington with respect to various issues pertaining to the operation of Eldorado Hills. The advisory board participated in the budget process, helped set the amounts for membership dues, and assisted in the creation of the schedule for the golf course. The advisory board also assisted Berrington in determining the sequence and pace of improvements to the golf course and facilities and helped maintain and beautify the golf course. The advisory board influenced Berrington's decision to permit member-owned golf carts, despite the fact that the use of such carts affected Berrington's revenue from cart rentals. The advisory board was involved in recruitment and retention of members and collection of delinquent membership dues.
After conducting an audit, the Nebraska Department of Revenue issued a deficiency determination to Berrington for the period March 1, 2002, through February 28, 2005. Berrington was assessed $40,894.88 in back taxes, interest in the amount of $3,925.12, and a penalty of $4,309.92, for a total of $49,129.92. The major component of the deficiency was the auditor's determination that membership dues received by Berrington were actually admission charges which were subject to sales tax. Berrington filed a petition for redetermination, *452 protesting the deficiency determination and asserting a claim for refund of sales taxes it had paid on snack food not intended for consumption on its premises.
After an evidentiary hearing conducted by a Department of Revenue hearing officer, the Tax Commissioner affirmed the deficiency assessment, reasoning that the "memberships" were actually taxable admissions because members of Eldorado Hills had no authority to hold office in Berrington, to vote for officers of Berrington, or to change the constitution and bylaws of Berrington. The commissioner rejected Berrington's claim that the department was equitably estopped from taxing Eldorado Hills memberships, as Berrington had contended that the department had taken an inconsistent position in a 1994 audit of an Omaha golf club in which Rick Waddington had held an ownership interest. Finally, the commissioner denied Berrington's claim for a refund of sales tax on snack foods, finding that there was no showing that the snack foods were intended to be consumed off the premises of Eldorado Hills.
Pursuant to the judicial review provisions in the Administrative Procedure Act,[2] Berrington petitioned for review in the district court for Lancaster County. That court affirmed the reasoning and decision of the Tax Commissioner, and Berrington filed this timely appeal. We moved the appeal to our docket pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state.[3]

ASSIGNMENTS OF ERROR
Berrington assigns, restated and consolidated, that the district court erred in finding (1) that the membership dues were admission charges subject to sales tax, (2) that equitable estoppel does not apply to the facts of this case, and (3) that Berrington was not entitled to a refund for sales tax it paid on snack food.

STANDARD OF REVIEW
[1, 2] Under the Administrative Procedure Act,[4] an appellate court may reverse, vacate, or modify a district court's judgment or final order for errors appearing on the record.[5] When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[6]
[3] The interpretation of statutes and regulations presents questions of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[7]

ANALYSIS

ARE MEMBERSHIPS TAXABLE?
We note that the applicable tax statutes have been amended without substantive change during the time period covered by the audit; thus, we will cite to the most *453 current version in effect on February 28, 2005, which is the end of the audit period.[8] During the years covered by the Berrington audit, Nebraska imposed a sales tax on "gross receipts,"[9] defined to include "the sale of admissions which means the right or privilege to have access to or to use a place or location."[10] Although the statutory language was silent on the taxability of "memberships," the Department of Revenue duly adopted and promulgated regulations which distinguished taxable admissions from nontaxable memberships as follows:
044.01 The term "admission", as used herein, means the right or privilege to have access to or use a place or location where amusement, entertainment or recreation is provided. The gross receipts from the sale of admissions, including surcharges, are subject to sales tax. This includes season or subscription tickets for specific occasions or for multiple occasions, either limited or unlimited during a period of time.
044.02 The term "membership", as used herein, means having all the participation rights of belonging to an organization which shall include, but are not necessarily limited to, the voting for officers, the holding of office, and the ability to change the constitution and bylaws. The payment or receipt of membership dues [is] exempted from the sales and use tax. Membership shall not include any charge that is intended to allow admission to a place or event, or series of events, rather than to confer participation rights.[11]
Applying these regulations, the department concluded that memberships sold by Eldorado Hills were taxable as "admissions," because the memberships did not grant concurrent rights to vote for officers of Berrington, to hold office in Berrington, or to change the constitution and bylaws of Berrington. Berrington contends that the focus of this inquiry should be on the members' relationship with Eldorado Hills, not with Berrington. Berrington contends, restated, that because members, through their advisory board, have a close working relationship with Eldorado Hills management and are able to influence policies and operations, they have participation rights which distinguish their memberships from taxable admission fees.
[4] The key language of the applicable regulation is "all the participation rights of belonging to an organization." The "organization" in this case can only be Berrington, the recipient of revenue generated by the operation of Eldorado Hills and the party liable for any sales tax payable on such revenue. Eldorado Hills has no separate legal organization or identity distinct from Berrington. The advisory board has no separate legal identity and is not the recipient of membership dues. Thus, the question turns on whether persons considered "members" of Eldorado Hills have participation rights with respect to Berrington. It is clear from the record that they do not. The payment of "membership" dues does not entitle a member to hold office in Berrington, vote for officers of Berrington, or change Berrington's organizational documents. The members' collective ability to influence management *454 decisions through the advisory board does not constitute a right to participate in the legal or business affairs of Berrington. While it is no doubt a sound business practice for Berrington to accommodate the wishes of Eldorado Hills members whenever possible, it is under no legal obligation to do so. Persons paying membership dues acquire certain rights to use the golf course and facilities at Eldorado Hills, but they acquire no legally cognizable participation rights with respect to Berrington. For example, members whose dues give them the right to use the golf course might unanimously agree that certain improvements should be made to the course, but they would have no right or power to require Berrington to undertake the improvements if it chose not to do so.
Berrington argues that we should consider a 2005 amendment to § 77-2701.16(11) as an aid to interpreting the regulation upon which the department based its determination. The amendment added in part the following language to the statute: "An admission includes a membership that allows access to or use of a place or location, but which membership does not include the right to hold office, vote, or change the policies of the organization."[12] This amendment did not become effective until after the audit period at issue in this case, and we therefore do not consider it. The regulation which was properly adopted and filed at the time of the audit period had the effect of statutory law[13] and constitutes the substantive law applicable to this case. Under its plain language, the amounts paid by Eldorado Hills members to Berrington constitute taxable admission charges, not exempt membership dues.
[5] Berrington also argues that the audit was arbitrary and capricious and that the department and the district court failed to independently analyze the pertinent facts, thereby placing upon Berrington "the burden to prove the assessment wrong."[14] We need not comment upon the manner in which the audit was conducted, because it is clear that a full factual record was made upon Berrington's petition for redetermination, and it is likewise clear that both the department and the district court conducted a reasoned analysis of the issues presented based upon the facts included in that record. Moreover, there is no merit to Berrington's argument that some deficiency in the audit unfairly shifted the burden of proof. Under the applicable regulation, "[t]he payment or receipt of membership dues are exempted from the sales and use tax."[15] An exemption from taxation is never presumed, and the burden of showing entitlement to a tax exemption is on the party claiming the exemption.[16]

IS DEPARTMENT EQUITABLY ESTOPPED FROM CLAIMING THAT MEMBERSHIP DUES ARE TAXABLE?
[6] Berrington argues that the district court erred in rejecting its claim that the department is estopped from taxing the dues paid by members of Eldorado Hills based upon the department's prior determination that membership dues paid to another golf club were not taxable. Berrington *455 contends that the two organizations have essentially the same legal structure. The Tax Commissioner and the district court determined that there were significant differences in the structure of the two organizations.
[7, 8] We need not compare and contrast the two organizational structures. Even if we assume arguendo that they are the same or similar and the department made inconsistent determinations of taxability, the elements of equitable estoppel are not established on this record. Equitable estoppel is a bar which precludes a party from denying or asserting anything to the contrary of those matters established as the truth by his own deeds, acts, or representations.[17] The State and its political subdivisions can be equitably estopped, but the doctrine of equitable estoppel will not be invoked against a governmental entity except under compelling circumstances where right and justice so demand; in such cases, the doctrine is to be applied with caution and only for the purpose of preventing manifest injustice.[18]
[9, 10] The elements of equitable estoppel are, as to the party estopped: (1) conduct which amounts to a false representation or concealment of material facts, or at least which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts.[19] As to the other party, the elements are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his or her injury, detriment, or prejudice.[20]
There is nothing in the record to suggest that any action of the department during the prior audit was a false representation or concealment of material facts, nor was any action "calculated to convey" an impression that the regulations would be applied in a similar manner at Eldorado Hills. Nor does the record reflect the inability of Berrington to ascertain the truth or falsity of any pertinent facts. The record thus supports the determination of the district court that Berrington failed to carry the burden of proof on its equitable estoppel claim.

IS BERRINGTON ENTITLED TO REFUND OF SALES TAX PAID ON SNACK FOODS?
[11] Berrington claimed it was entitled to a refund of $3,228.04 due to taxes it erroneously paid on the sale of snacks that were not intended for immediate consumption. The applicable Department of Revenue regulations provided:
087.01A(4) Snack Foods. Snack foods are exempt unless the snack foods are sold by an eating establishment, concessionaire, or vending machine or are a part of a meal. Examples of snack foods are potato chips, soft drinks, candy, chewing gum, cookies, and donuts.

*456 . . . .
087.02A(1) Any food sold through a vending machine is taxed.
. . . .
087.02A(3) Any food sold by a concessionaire is taxed, except for certain sales by schools and school groups. . . .[21]
In support of its refund claim, Berrington's accountant prepared an "Estimated Sales Tax Overpayment Analysis For Years Ended December 31, 2002, 2003 & 2004." The estimate was based on six invoices which did not identify what products were sold, whether they were sold for immediate consumption, where they were sold, or even whether they were sold by Berrington at all. The district court found that Berrington did not carry its burden of proving that the snack foods were not sold through its restaurant as part of a meal, by its snack shop, or through a vending machine. We agree that these facts essential to the refund claim were not established by the evidence.

CONCLUSION
For the reasons discussed, we conclude that the decision of the district court affirming the determination of the Tax Commissioner in all respects conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. Accordingly, we affirm the judgment of the district court.
Affirmed.
MILLER-LERMAN, J., participating on briefs.
NOTES
[1] See, Neb.Rev.Stat. § 77-2703 (Cum.Supp. 2004); 316 Neb. Admin. Code, ch. 1, §§ 044.01 and 044.02 (1993).
[2] See Neb.Rev.Stat. § 84-917 (Reissue 2008).
[3] Neb.Rev.Stat. § 24-1106(3) (Reissue 2008).
[4] See Neb.Rev.Stat. §§ 84-901 to 84-920 (Reissue 2008).
[5] Intralot, Inc. v. Nebraska Dept. of Rev., 276 Neb. 708, 757 N.W.2d 182 (2008); Orchard Hill Neighborhood v. Orchard Hill Mercantile, 274 Neb. 154, 738 N.W.2d 820 (2007).
[6] Walsh v. State, 276 Neb. 1034, 759 N.W.2d 100 (2009); Nothnagel v. Neth, 276 Neb. 95, 752 N.W.2d 149 (2008).
[7] State ex rel. Musil v. Woodman, 271 Neb. 692, 716 N.W.2d 32 (2006).
[8] See, Tyson Fresh Meats v. State, 270 Neb. 535, 704 N.W.2d 788 (2005); Lackawanna Leather Co. v. Nebraska Dept. of Rev., 259 Neb. 100, 608 N.W.2d 177 (2000).
[9] § 77-2703(1).
[10] Neb.Rev.Stat. § 77-2701.16(11) (Cum. Supp.2004).
[11] 316 Neb. Admin. Code, ch. 1, §§ 044.01 and 044.02 (emphasis supplied).
[12] 2005 Neb. Laws, L.B. 216, § 4.
[13] See Lackawanna Leather Co. v. Nebraska Dept. of Rev., supra note 8.
[14] Brief for appellant at 26.
[15] 316 Neb. Admin. Code, ch. 1, § 044.02.
[16] See, Lackawanna Leather Co. v. Nebraska Dept. of Rev., supra note 8; Pittman v. Sarpy Cty. Bd. of Equal., 258 Neb. 390, 603 N.W.2d 447 (1999).
[17] State on Behalf of Hopkins v. Batt, 253 Neb. 852, 573 N.W.2d 425 (1998).
[18] See, Rauscher v. City of Lincoln, 269 Neb. 267, 691 N.W.2d 844 (2005); Estate of McElwee v. Omaha Transit Auth., 266 Neb. 317, 664 N.W.2d 461 (2003).
[19] J.R. Simplot Co. v. Jelinek, 275 Neb. 548, 748 N.W.2d 17 (2008); Pennfield Oil Co. v. Winstrom, 272 Neb. 219, 720 N.W.2d 886 (2006).
[20] Id.
[21] 316 Neb. Admin. Code, ch. 1, §§ 087.01A and 087.02A (1998).